Harry L. McCALL, Plaintiff,

v.

H.G. CROSTHWAIT, et al., Defendants.

No. 2:07–CV–870–WKW.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 23, 2008.

Harry L. McCall, Montgomery, AL, pro se.

Kimberly Owen Fehl, City of Montgomery, Montgomery, AL, for Defendants.

## ORDER

W. KEITH WATKINS, District Judge.

Before the court is the Recommendation of the Magistrate Judge (Doc. # 56) on

Defendants' motion for summary judgment (Doc. # 46). With the motion, Defendants filed a supporting memorandum with exhibits. (Doc. # 47.) Plaintiff Harry L. McCall ("McCall") filed a response (Doc. # 54), and a brief, with an exhibit, opposing summary judgment (Doc. # 55). The Magistrate Judge entered a recommendation that summary judgment be denied in part and granted in part (Doc. # 56, at 13–14), to which Defendants objected and requested leave of court to supplement the record (Doc. # 57). Their request to supplement the record was granted (Doc. # 58), and Defendants filed a certified copy of the complete medical record provided to them by a Dr. Gilberto Sanchez ("Dr.Sanchez") (Doc. # 59). For the following reasons, the Magistrate Judge's recommendation is due to be rejected in part and adopted in part.

The Magistrate Judge recommends denying summary judgment on the claim that Defendant Officer H.G. Crosthwait ("Officer Crosthwait") used excessive force against McCall when he was in the Montgomery Municipal Jail, in violation of the Fourth Amendment to the United States Constitution.[1] (Recommendation 13–14.) McCall was taken into custody for domestic violence and transported to the Montgomery Police Department.[2] (Recommendation 3–4.) McCall claims that Officer Crosthwait pushed him into a steel cell door and a plexiglass window when moving from an elevator. (Recommendation 4.) A medical team on site found that McCall had sustained no injuries, but he insisted

on medical assistance from the hospital, which was granted. (Recommendation 4.) McCall complained of pain in his right shoulder, upper forearm and elbow, but x-rays indicated no abnormalities in the shoulder, and no acute findings in his elbow. (Recommendation 4.) McCall's only injuries were a contusion to his right elbow and shoulder, and he was told to take ibuprofen and follow up with his primary physician if needed. (Recommendation 5.)

The next day, McCall complained to Dr. Sanchez that he was suffering from shoulder and arm pain, headaches, dizziness, and blurred vision from, as he claimed, being slammed against the door. (Recommendation 5.) Dr. Sanchez referred him for CT scans of his head and spine. (Recommendation 5.) The head scan revealed a deformity "suspicious for an old inferior blow-out fracture" in the inferior orbital wall on the right. (Sanchez Complete Records 19.) The spinal scan showed a "small central disc protrusion/herniation which does not appear to contact the spinal cord or narrow the spinal canal." (Sanchez Complete Records 20.) However, there is no indication in the medical records or other admissible testimony as to causation of the old fracture or the disc protrusion. (*See* Sanchez Complete Records.)

■ The Fourth Amendment protects the " 'right to be free from the use of excessive force in the course of an arrest.' "[3] *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir.2002) (quoting *Lee v.*

---

**1.** McCall's claim is brought pursuant to 42 U.S.C. § 1983.

**2.** Defendants' objections to the ruling on excessive force go to the legal, not factual rulings of the recommendation. The facts laid out in the "Facts" section of the recommendation, on pages three to five, are thus

adopted upon independent review of the record.

**3.** The Fourth Amendment also protects against " 'harassing and abusive' " behavior which rises to the level of "unreasonable." *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir.2005) (quoting *Fontana v. Haskin*, 262

*Ferraro,* 284 F.3d 1188, 1197 (11th Cir. 2002)). Government officials sued for excessive force, however, can assert qualified immunity. Defendants argue that Officer Crosthwait is entitled to qualified immunity on the excessive force claim, but the Magistrate Judge recommends that qualified immunity not be granted because there is a genuine issue of material fact as to whether the force was excessive or necessary.[4] (Recommendation 10.)

■■■ Qualified immunity is more than "a mere defense to liability"—it is immunity from suit. *Galvez v. Bruce,* 552 F.3d 1238, 1241, 2008 WL 5246102, at *3 (11th Cir.2008) (quoting *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1773 n. 2, 167 L.Ed.2d 686 (2007)). Under qualified immunity, government officials acting pursuant to a discretionary function[5] are protected from civil liability if the conduct does not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The " 'threshold' "

question of whether the officer violated a constitutional right must be resolved before considering whether the violation was clearly established. *Galvez,* 552 F.3d at 1241, 2008 WL 5246102, at *3 (quoting and citing *Scott,* 127 S.Ct. at 1774). Qualified immunity is warranted in excessive force cases " 'unless application of the standard would inevitably lead every reasonable officer [in defendant's position] to conclude the force was unlawful,' " *Reese v. Herbert,* 527 F.3d 1253, 1272 (11th Cir.2008) (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir.1994)). *Galvez,* 552 F.3d at 1244, 2008 WL 5246102, at *5. Officer Crosthwait is entitled to qualified immunity in this case because there was no Fourth Amendment violation.

■■■ The use of *de minimis* force constitutes a violation of the Fourth Amendment only if the officer was not entitled to arrest or detain the plaintiff. *Reese,* 527 F.3d at 1272. McCall has not challenged the basis for his arrest. Where probable cause is not challenged, the question of whether force was excessive is a question of whether the officer's actions were " 'ob-

___

F.3d 871, 878 (9th Cir.2001)). McCall's claim is only for excessive force.

**4.** The recommendation analyzes McCall's claim under the Fourth Amendment, which the parties have not challenged. The recommendation found that at the time of the jail incident, McCall was in a " 'legal twilight zone' " because he had already been taken into the jail but had not yet been booked, and had not yet made an initial appearance. (Recommendation 8 (quoting *Calhoun v. Thomas,* 360 F.Supp.2d 1264, 1271–72 (M.D.Ala.2005) (Thompson, J.)).) *Calhoun* applied the Fourth Amendment to a plaintiff who had already been " 'seized' and for all intents and purposes, arrested at the time of the alleged abuses,' " but nevertheless, was not a pretrial detainee because he had not been officially arrested or booked; nor had the plaintiff made an initial appearance be-

fore a judge, or been charged with a crime. 360 F.Supp.2d at 1271–72; *see also Shaw v. Marshall,* No. 07cv606, 2008 WL 1924992, at *7 (M.D.Ala. Apr. 9, 2008) (DeMent, J.). The Fourth Amendment standard is "commonly an easier standard for a plaintiff to meet" than the Fourteenth Amendment's requirement of deliberate indifference to a substantial risk of harm. *Hicks,* 422 F.3d at 1254 n. 7.

**5.** The parties do not dispute that Officer Crosthwait was performing discretionary functions. (Objections to Recommendation 3–4.) The burden is on McCall then to prove qualified immunity does not apply. *Skop v. City of Atlanta, GA,* 485 F.3d 1130, 1136 (11th Cir.2007).

jectively reasonable' in light of the facts and circumstances [he] faced at the time." [6] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Those facts and circumstances include " 'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.' " *Id.* (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865); *see also Galvez*, 552 F.3d at 1242, 2008 WL 5246102, at *4.[7]

■ *De minimis* force, without more, however, cannot constitute a Fourth Amendment violation if the basis of the arrest is not challenged. *Nolin*, 207 F.3d at 1257 (reaffirming that after *Graham*, the *de minimis* principle still applies); [8] *Reese*, 527 F.3d at 1272. Under the *de minimis* principle, "a minimal amount of force *and* injury ... will not defeat an officer's immunity in an excessive force case." *Nolin*, 207 F.3d at 1258 (emphasis added). Indeed, even if the force was unnecessary, if "the actual force used and the injury inflicted were both minor in nature .... the application of the excessive force standard would not inevitably lead an official in [the defendant's] position to conclude that the force was unlawful." *Id.* at 1256–57 (discussing and quoting *Jones v. City of Dothan*, 121 F.3d 1456, 1460–61 (11th Cir.1997) (per curiam)); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir.2003).[9]

■ In McCall's case, the hospital found no injuries after the jail incident, aside from a contusion to his right elbow and shoulder. Even if the contusion was caused by the incident, and not by any immediately preceding domestic dispute, the injury was minor. *See, e.g., Vinyard*, 311 F.3d at 1349 n. 13 (noting a strong argument that "minor bruising" is *de minimis* injury); *Nolin*, 207 F.3d at 1258 n. 4 (finding *de minimis* force when "minor

---

6. The reasonableness inquiry is a " 'careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' " *Lee*, 284 F.3d at 1197 (11th Cir.2002) (internal quotation marks omitted).

7. The Eleventh Circuit's test for excessive force prior to *Graham* is still valid as to three of the factors courts should consider: "(1) the need for the application of force; (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted," *Lee*, 284 F.3d at 1198. *Id.* at 1198 n. 7; *see also Nolin*, 207 F.3d at 1256 n. 2 ("The *Graham* Court did not establish a precise test for identifying excessive force...."). The recommendation addresses the excessive force factors as articulated by this Eleventh Circuit test. (*See* Recommendation 9–10.)

8. In reversing a district court's ruling to the contrary, *Nolin* reaffirmed the *de minimis* principle and three circuit opinions that applied it after *Graham* to reverse district courts that denied qualified immunity. *Nolin*, 207 F.3d at 1257 & 1258. According to *Nolin*, one of those cases, *Post*, "refined *Graham* by concluding that in making the highly fact-intensive excessive force inquiry, a court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury." *Nolin*, 207 F.3d at 1257 n. 3.

9. In *Galvez*, the court analyzed the plaintiff's excessive force Fourth Amendment claim under the *Graham* factors and not the *de minimis* principle. 2008 WL 5246102. The *de minimis* principle, however, was clearly inapposite given the facts of the case. The office dragged the plaintiff outside and slammed him into the corner of a concrete structure, causing "severe" pain, and "serious" injuries (broken ribs and a leaking aneurysm). *Id.* at *4, 6 (likening the force to "significant" force).

bruising" along with minimal force); *Jones,* 121 F.3d at 1460 (finding that the plaintiff's pain from lifting his arms because of a prior stroke, and his pain from an arthritic knee after having his legs kicked apart was "minor" injury); *Gold v. City of Miami,* 121 F.3d 1442, 1446 (11th Cir.1997) (per curiam) (describing "skin abrasions" as a minor injury, though they were "skin abrasions for which [the plaintiff] did not seek medical treatment"). The scans taken after McCall's next-day visit with Dr. Sanchez exposed only two problems. The first, found by the head scan, was a "deformity in the inferior orbital wall on the right suspicious for an *old* inferior blow-out fracture." (Sanchez Complete Records 19 (emphasis added).) The report, thus, cuts against establishing any causation between the incident and injury. The second problem, found by a spinal scan, was "a small central disc protrusion/herniation which does not appear to contact the spinal cord or narrow the spinal canal." (Sanchez Complete Records 20.) There is no indication in the medical records, or other testimony, that the spinal finding could have been caused by Officer Crosthwait's actions. Indeed, there is insufficient evidence to adjudicate on the severity, much less the causes of the injury. It should also be noted that " '[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown at the time.' " *Durruthy,* 351 F.3d at 1094 n. 10 (quoting *Rodriguez v. Farrell,* 280 F.3d 1341, 1353 (11th Cir.2002)). From the record now before the court, the injuries McCall incurred were only minimal.

▮ The force Office Crosthwait exerted was also minimal. "The minor nature

of [an] injury [can] reflect[ ] that minimal force was used...." *Gold,* 121 F.3d at 1446 (in the context of handcuffing); *see also Skrtich v. Thornton,* 280 F.3d 1295, 1302 (11th Cir.2002) (describing the type of injury as a way of showing that force was *not de minimis* ). The Eleventh Circuit has found *de minimis* force and qualified immunity in the following circumstances: when an officer put a foot on the face of the plaintiff, who was face down on the pavement, after he asked why he was being arrested, *Crosby v. Monroe County,* 394 F.3d 1328, 1334–35 (11th Cir.2004); when the plaintiff was grabbed and shoved a few feet against a vehicle while pushing a knee against his back and pushing his head into the van and searching the groin area in an uncomfortable way, *Nolin,* 207 F.3d at 1258 n. 4; when the plaintiff's legs were kicked apart, requiring him to raise his arms, and pulling his wallet from his pants, *Jones,* 121 F.3d at 1460; and when tight handcuffs were on the plaintiff's wrists for twenty minutes causing pain and skin abrasions, *Gold,* 121 F.3d at 1446. *See also Bryan v. Spillman,* 217 Fed.Appx. 882, 886 (11th Cir.2007) (per curiam) (finding the "temporary pain" and "no treatment" and "no lasting injury" of a rough search of the genitals, and pushing a defendant against a car and holding his head down, to be *de minimis* ); *cf. Vinyard,* 311 F.3d at 1349–50 (finding excessive force when officer used pepper spray on the handcuffed plaintiff who was in the patrol car but noting that it was the *pepper spray* that turned *de minimis* force, like grabbing the arm and causing minor bruising, into excessive force, *id.* at 1349 n. 13).

In *Vinyard,* the Eleventh Circuit held that the defendant's force at the jail was *de minimis.* 311 F.3d at 1348 n. 13. When Vinyard arrived at the jail, the de-

fendant "dragged Vinyard inside, either by her shirt, her arm or her hair." *Id.* at 1344. This force was *de minimis* even though the arrest had proceeded from the initial seizure to the processing stage. In *Post,* the Eleventh Circuit stated that pushing the plaintiff against the wall after he had been handcuffed and taken outside "might have been unnecessary" but was not "plainly unlawful," and the court awarded qualified immunity. 7 F.3d at 1559–60; *Nolin,* 207 F.3d at 1258 ("We again hold, as we did in a line of cases beginning with *Post,* that a minimal amount of force and injury ... will not defeat an officer's qualified immunity in an excessive force case" and citing *Post* on the above-referenced point, *id.* at 1256).

■ Whether a plaintiff is restrained bears on whether the force used against him was *de minimis. See Lee,* 284 F.3d at 1199; *see also Durruthy,* 351 F.3d at 1094 (distinguishing cases where plaintiff was restrained and where he was not). In *Lee,* the Eleventh Circuit allowed an excessive force claim to go forward on summary judgment because the police slammed the plaintiff's head into the pavement after he was fully secured. 284 F.3d at 1199 (discussing *Slicker v. Jackson,* 215 F.3d 1225 (11th Cir.2000) (where the evidential foundation was that officers "repeatedly hit [the plaintiff's] head on the pavement, kicked him, and knocked him unconscious" after he was handcuffed, *id.* at 1233)). The police had slammed the plaintiff's head against a truck after she had been "arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed." *Lee,* 284 F.3d at 1199 (distinguishing *de minimis* cases because they did not involve *severe* and disproportionate force after the arrest had been fully effect-

ed, the plaintiff secured, and the danger vitiated). The court denied qualified immunity in *Priester* because the officer allowed a dog to attack an already subdued plaintiff lying on the ground, and in *Smith,* because the officer broke the arm of an arrestee who " 'docilely submitted' " to a request to get down. *Id.* (discussing *Priester v. City of Riviera Beach,* 208 F.3d 919 (11th Cir.2000) and *Smith v. Mattox,* 127 F.3d 1416 (11th Cir.1997)).

■ For all of these cases, however, the force was not minor. Violence to the head (directly pushing it against a very hard surface) and breaking limbs are not minimal force. As the Eleventh Circuit recently stated, the "lesson" of *Lee* "is that qualified immunity is not available to officers who subject arrestees to *significant* force after 'the arrest ha[s] been fully effected, the arrestee completely secured, and all danger vitiated.' " *Galvez,* 2008 WL 5246102, at *6 (emphasis added) (quoting *Lee,* 284 F.3d at 1199–1200). It is the "[u]se of *significant* force on an arrestee who would be considered by any reasonable police officer to be fully secured" that is " 'wholly unnecessary' " for law enforcement purposes. *Id.* (quoting *Lee,* 284 F.3d at 1199).

■ McCall's contention is that Officer Crosthwait "pushed him with such force that he fell into a steel door and plexiglass window." (Recommendation 9.) Officer Crosthwait claims that his force was proportional to the amount of force necessary to control McCall, who had taken aggressive actions. (Recommendation 9–10.) This tension may give rise to a factual dispute over whether the force was necessary (Recommendation 10), but if the force and injury were minimal, the *de minimis* principle applies regardless of whether the

force was necessary. Given the examples of when force has been found to be *de minimis* in this circuit, the force in this case was *de minimis even if* the officer pushed McCall into the door unprovoked. (*Contra* Recommendation 10.)[10] The force Officer Crosthwait applied was a push or shove into a door and plexiglass window. This action was taken not while McCall was standing still but upon exiting an elevator. McCall was handcuffed, but Officer Crosthwait did not bang McCall's head against anything, or send a ferocious animal after him. McCall was not slammed, and was not pushed into harm's way. His lack of injury is indicative of minimal force. Though the nonexistence of a serious injury does not jeopardize an excessive force claim if the *force* was more than minimal, *Lee*, 284 F.3d at 1200, the absence of injury can signal whether the force was minimal.

■■■ As the Supreme Court has stated, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.' " *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). The excessive force inquiry provides a buffer for officers who are often acting on incomplete information and making split-second decisions. *Crosby*, 394 F.3d at 1334 (citing *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865). Ruling that McCall has shown enough here for excessive force would erode the *de minimis* principle that helps maintain that buffer. The force that Officer Crosthwait applied to McCall was *de minimis*, and for that reason, Officer

Crosthwait is entitled to qualified immunity because there was no constitutional violation.

Accordingly, it is ORDERED as follows:

(1) The recommendation (Doc. # 56) is REJECTED and Defendants' objections (Doc. # 57) are SUSTAINED with respect to McCall's § 1983 claim against Officer Crosthwait in his individual capacity for use of excessive force. Defendants' motion for summary judgment (Doc. # 46) is therefore GRANTED with respect to that claim.

(2) There being no objections to the recommendation on the excessive force claims against Defendant Mayor Bobby Bright and Chief of Police Arthur Baylor, and upon an independent review of the record, the recommendation (Doc. # 56) that the Defendants' motion for summary judgment be granted is ADOPTED and the motion (Doc. # 46) is GRANTED, with respect to those claims.

(3) Having dismissed the federal claims, the court declines to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3). The recommendation (Doc. # 56) is therefore REJECTED with respect to the state-law claims, and they are DISMISSED for lack of jurisdiction. The Clerk of the Court is DIRECTED to close this case.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

CHARLES S. COODY, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

In this 42 U.S.C. § 1983 action, Harry L. McCall ("McCall") claims his civil rights

---

10. In other words, McCall has no claim as a matter of law, even taking his allegation that he was pushed or shoved unprovoked as true, and finding separately, that he has failed to support his allegation, for summary judgment purposes, that he was more than minimally injured (*contra* Recommendation 9).

were violated during his incarceration in the Montgomery Municipal Jail. Specifically, he asserts that the defendants violated his constitutional rights by subjecting him to the use of excessive force. In addition, he brings a state law claim of battery against the defendants. He names as defendants: Bobby Bright, Mayor of the City of Montgomery; Art Baylor, Chief of Police; and H.G. Crosthwait, a police officer.

The defendants filed a motion for summary judgment and supporting evidentiary materials addressing McCall's claims for relief. (Doc. No. 47.) Upon consideration of the motion, the evidentiary materials filed in support thereof, and the responses in opposition filed by McCall, the court concludes that the defendants' motion for summary judgment should denied with respect to Shaw's excessive force claim against Officer Crosthwait and granted with respect to the remaining claims against all of the defendants.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593 (11th Cir.1995); *Edwards v.*

*Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir.1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R.CIV.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *See also De Long Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983).

## III. FACTS[1]

McCall and his family members were not happy with each other on October 17, 2006. At some point that day, McCall's wife reported to the police that McCall had swung a hatchet at her and punched her. (Defs' Ex. DX 2, Attach. to Murphy's Affid.) While McCall's wife was signing a complaint at the police station, the police received another call concerning a domestic dispute between McCall and his daughter. (Id.; Defs' Ex. 3, Crosthwait's Affid., pp. 1–2.) Shortly thereafter, Officer Crosthwait went to McCall's residence to arrest him. (Crosthwait's Affid., p. 1.)

McCall was taken into custody and transported to the Montgomery Police Department. (Id., p. 2.) While in the booking area, McCall's hands were cuffed behind his back. (Attach. to Doc. No. 55, McCall's Affid.) McCall complained to officers that the cuffs were too tight and began "moving and standing to ease the pain." (Id.) Officer R.A. Wilhoit, a supervisor, instructed Officer Crosthwait to take McCall upstairs to the jail due to his behavior.[2] (Attach. to Doc. No. 47, Defs' Ex. DX 4, Wilhoit's Affid., pp. 1–2.)

Officer Crosthwait escorted McCall onto the elevator. When the elevator door opened, Officer Crosthwait pushed McCall into a steel cell door and a plexiglass window. (Pl's Comp., p. 2; Attach. to Doc. No. 20, Pl's Affid.) McCall immediately requested medical treatment. (Crosthwait's Affid., p. 3.) Although a medical unit arrived at the jail and determined that the plaintiff was not injured, McCall insisted that he receive additional medical assistance at the hospital. (Id.) Law enforcement officials subsequently transported McCall to Jackson Hospital. (Id.)

In the emergency room, McCall complained of pain in his right shoulder, upper forearm, and elbow. (Defs' Ex. DX 8.) An x-ray of McCall's shoulder indicated no abnormalities. (Id.) In addition, an x-ray of his elbow indicated no acute findings. (Id.) Upon his release from the hospital, McCall was diagnosed as suffering from a contusion to his right elbow and shoulder. (Id.) He was instructed to take Ibuprofen and follow-up with his primary physician if needed. (Id.)

The next day, McCall went to his primary physician, Dr. Gilberto Sanchez, complaining that he began suffering from pain in his shoulder and arm, headaches, dizziness, and blurred vision after his head was slammed against a door at the police station. (Attach. to Doc. No. 55.) Dr. Sanchez sent McCall for a CT scan of his head and spine. (Id.) A brain scan indicated a "deformity in the inferior orbital wall on the right suggesting an old blow-out fracture." (Id.) The scan of McCall's spine indicated a "small calcified posterior spur" and a "small central disc protrusion/herniation which [did] not appear to contact the spinal cord or narrow the spinal canal." (Id.)

## IV. DISCUSSION

### A. Claims against Mayor Bright and Chief Baylor

The law is well settled that a defendant cannot be held liable in an ac-

---

1. As recounted by the court, these facts are stated favorably for the plaintiff. The court makes no factual findings, and the actual facts may be different than those stated here.

2. Generally, the holding area is used to book individuals who are cooperative; however, when an individual is threatening or uncooperative, the subject is taken upstairs to the jail. (Wilhoit's Affid., p. 2.)

tion brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or on the basis of vicarious liability. *Gray v. Bostic*, 458 F.3d 1295, 1308 (11th Cir.2006); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Zatler v. Wainwright, supra.*

▆▆▆▆ Although supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability, *Gray, supra*, supervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003). Supervisory liability under § 1983 occurs "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Id.* A causal connection may be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007); *Cottone*, 326 F.3d at 1360. Deprivations that constitute wide spread abuse sufficient to constitute notice to the supervising official must be "obvious, flagrant, rampant and of continued duration rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11 th Cir. 1990).

▆▆▆▆ McCall's complaint is devoid of any specific allegations against Bright and Baylor. McCall has failed to present any evidence indicating that there is a history of widespread abuse which placed Bright and Baylor on notice of a need to stop an alleged deprivation, that their customs or policies resulted in deliberate indifference to McCall's constitutional rights, or that they directed subordinates to act unlawfully or failed to stop them from doing so. Moreover, it is clear that Bright and Baylor are not in any way involved with the actions about which McCall complains and that these defendants are being sued based on their administrative positions. Thus, to the extent McCall asserts that Bright and Baylor are liable under the theory of respondeat superior or on the basis of vicarious liability, the defendants' motion for summary judgment should be granted.[3]

## B. The Use of Force

McCall claims that Officer Crosthwaite violated his right to be free from excessive

---

**3.** In his response, McCall argues that Bright and Baylor failed to allege facts indicating that they provided Crosthwaite adequate training concerning the transport of inmates within the police station. A deliberate indifference claim was not raised in the plaintiff's complaint and will not be considered by the court. Even assuming *arguendo* that McCall had presented such a claim, he has failed to demonstrate a genuine issue of disputed fact.

A plaintiff must show that the training program was inadequate, and not simply that it was administered poorly. *See Oliver v. City of Orlando*, No. 6:06cv1671–Orl–31DAB, 2008 WL 4000863, *4 (M.D.Ala. Aug. 22, 2008); *Durruthy v. City of Miami*, No. 01–4155–CIV– MORENO, 2002 WL 31829586, *2 (S.D.Fla. Dec. 13, 2002). Moreover, it is arguable that the defendants would be entitled to qualified

force. The defendants deny that they used excessive force against McCall and maintain they are entitled to qualified immunity.

When evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). While the facts indicate that McCall had already been " 'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F.Supp.2d 1264, 1271–72 (M.D.Ala. 2005). McCall was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked into the Montgomery Municipal Jail. In addition, he had not made an initial appearance before a judge. Thus, the alleged application of excessive force in this case occurred while McCall was in a "legal twilight zone." *Calhoun, supra.* An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274. Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case. *Id.See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir.2002) (analyzing plaintiff's claim that she was subjected to the use of excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's guarantee against unreasonable searches and sei-zures encompasses the plain right to be free from the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir.2001). The court must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the counter-vailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). When balancing the necessity of using some force, a court must evaluate a number of factors, including (1) the need for the application of force, *i.e.*, whether the individual posed an immediate threat to the safety of the officers or others,(2) the relationship between the need and amount of force used; and (3) the extent of the injury inflicted. *See Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir.2002) (citing *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986)). "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir.2000).

McCall alleges that, although he did not physically threaten Officer Crosthwaite, the defendant pushed him with such force that he fell into a steel door and plexiglass window, injuring the orbital wall of his right eye, as well as his spine, right elbow, and shoulder. Consequently, McCall has

immunity with respect to this deliberate indifference claim. *See Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir.1997).

alleged the deprivation of a constitutional right. *See Saucier, supra.*

Officer Crosthwaite denies that he used excessive force against McCall. In support of this assertion, Officer Crosthwaite argues he utilized force in response to McCall's aggressive actions and used only that amount of force necessary to control McCall. The plaintiff, however, contends that Officer Crosthwaite employed force which was excessive, unprovoked, and unjustified. Plainly, there is a factual dispute concerning whether there was a need for the use of force and whether the force used was excessive under the circumstances. Because there are genuine issues of fact, the court declines to decide the qualified immunity issue at this stage of the proceedings. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1487–88 (11th Cir.1996); *Jones v. City of Atlanta,* 192 Fed.Appx. 894 (11th Cir.2006). Based on the forgoing, the motion for summary judgment with respect to the Fourth Amendment claim against Officer Crosthwaite should be denied.

## C. The State Law Claim

To the extent McCall asserts a battery claim for damages against the defendants in their official capacities, he is entitled to no relief in this court. Pursuant to Ala. Code § § 11–47–23 and 11–47–192, no claim will lie against a city or town for personal injury unless a sworn statement by the party injured is filed with the city clerk within six months of the date of injury.[4] It is undisputed that McCall did not file a sworn statement with the Clerk of the City of Montgomery within six months of his arrest.[5] The law is well-settled in Alabama that a sworn statement is a prerequisite before a suit against a city or municipality is allowed to proceed. *See Shows v. Morgan,* 40 F.Supp.2d 1345, 1365 (M.D.Ala.1999) (dismissing state law claims against city and its officers in their official capacity because of plaintiff's failure to comply with Alabama's notice-of-claim statutes); *Poe v. Grove Hill Mem.'l Hosp. Bd.,* 441 So.2d 861, 863 (Ala.1983) ("Therefore, to satisfy the statutory requirement, a plaintiff in a tort action against a municipality must file a sworn statement with the clerk within six months from the accrual of the claim."). *See also Cox v. City of Birmingham,* 518 So.2d 1262, 1264 (Ala.1987) (statement must be sworn).

Actual notice of a claim does not replace the statutorily required notice. "Mere

---

**4.** Ala.Code § 11–47–192 reads as follows:

No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

Ala.Code § 11–47–23 provides, in pertinent part: All claims against the municipality ... shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Alabama law is clear that these sections are to be considered *in pari materia. Poe v. Grove Hill Mem'l Hosp. Bd.,* 441 So.2d 861 (Ala. 1983); *Harris v. City of Montgomery,* 435 So.2d 1207 (Ala.1983).

**5.** The parties' evidentiary materials concerning the date the Clerk received the notice are somewhat conflicting. McCall's evidentiary materials indicate that his attorney submitted a notice of claim to Montgomery City Hall on April 17, 2007. (Attach. to Doc. No. 55.) The defendants' copy of the notice of claim indicates that the document was received by the city clerk on April 18, 2007. (Defs' Ex. DX 1.) Nonetheless, neither April 17, 2007, nor April 18, 2007, however, fall within the 180–day limitations period.

knowledge of the incident resulting in the injury does not satisfy the objectives of the notice-of-claim statute." *Large v. City of Birmingham*, 547 So.2d 457, 458 (Ala. 1989). *See generally City of Montgomery v. Weldon*, 280 Ala. 463, 195 So.2d 110, 112 (1967) (plaintiff could not satisfy the notice of claim requirement "even though he had sent a letter to city officials detailing the accident and his injuries, principally because he had not stated the amount of damages claims and had not sworn to the statement."). Thus, the court concludes that the defendants' motion for summary judgment with respect to McCall's battery claim against Bright, Baylor, and Crosthwaite in their official capacities, as well as the City of Montgomery, should be granted.

The defendants argue that, with respect to the state law claims against them in their individual capacities, they are entitled to immunity on the basis of discretionary function or state-agent immunity under Alabama law. Alabama Code § 6–5–338 provides that a duly appointed state, county, or municipal police officer "shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties." No immunity is available, however, " 'when the state agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.' " *McCray v. City of Dothan*, No. 01–15756–DD, 2003 WL 23518420, at *7 (11th Cir. 2003) (quoting *Ex parte Cranman*, 792 So.2d 392, 405 (Ala.2000)). The court notes that qualified immunity under federal law and state-function immunity under Alabama law are not the same; federal immunity employs an objective, reasonable-officer standard, while state immunity

is a subjective inquiry into what the defendant officer actually believed. *McCray, supra* (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 9 (11th Cir.2001)).

As previously discussed, there is a genuine issue of fact concerning whether Officer Crosthwait shoved McCall into a steel cell door and plexiglass window without provocation. Officer Crosthwait contends that McCall refused to step out of the elevator and made an aggressive move toward him; McCall, however, asserts that he did not physically threaten Officer Crosthwait and that the defendant pushed him with such force that he injured his right eye, elbow, and back. Thus, under the evidence presented, a fact finder could conclude that Officer Crosthwait was in a position to discern that McCall made no offensive move justifying the use of force. *See McCray, supra.* Therefore, the shoving of McCall into a steel door and plexiglass window, as Crosthwait is accused of doing, supports an inference of action with malice. *Id.* (citing *Wal–Mart Stores, Inc. v. Goodman*, 789 So.2d 166, 174 (Ala.2000) (Malice "may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful.")) Given there are genuine issues of disputed fact, the court declines to decide the issue of state-function immunity at this stage of the proceedings. Consequently, the motion for summary judgment with respect to McCall's battery claim against the defendants also should be denied.

## V. CONCLUSION

Accordingly, it is ORDERED as follows:

1. To the extent the plaintiff claims that Officer Crosthwaite used excessive force against him in the Montgomery Municipal Jail in violation of

the Fourth Amendment, the motion for summary judgment be DENIED. (Doc. No. 46.)

2. To the extent the plaintiff sues the defendants in their official capacities with respect to the state law battery claim, the motion for summary judgment is due to be GRANTED. (Doc. No. 46.)

3. To the extent the plaintiff sues the defendants in their individual capacities with respect to the state law battery claim, the motion for summary judgment is due to be DENIED. (Doc. No. 46.)

4. The motion for summary judgment with respect to the remaining claims against the defendants be GRANTED. (Doc. No. 46.)

5. The excessive force claim against Officer Crosthwaite and the state law battery claim against Officer Crosthwaite, Bright, and Baylor be set for a jury trial.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before November 3, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981, *en banc* ), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.