[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-10531
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 18, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-02176 CV-T-27-MSS

ADOLFO GALVEZ,

Plaintiff-Appellant,

versus

HENRY BRUCE, a Hillsborough County
Sheriff's Officer in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 18, 2008)**

Before ANDERSON, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

Plaintiff Adolfo Galvez appeals the district court's grant of summary judgment

to Defendant Henry Bruce, a Hillsborough County Sheriff's Deputy.  Galvez sued

Bruce pursuant to 42 U.S.C. § 1983, alleging that Bruce used excessive force while putting Galvez under arrest, in violation of Galvez's Fourth and Fourteenth Amendment rights. The district court found that Bruce is entitled to qualified immunity. Because we find that, under Galvez's version of the facts, Bruce is not entitled to qualified immunity, we vacate the summary judgment and remand to the district court.

## I. FACTUAL BACKGROUND

We recite the facts in the light most favorable to Plaintiff. *See Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002) (*citing Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)). As in *Vinyard*, the Defendant in this case disputes much of the Plaintiff's version of events, including Galvez's account of his own nonresistance and the level of force used by Bruce.

Galvez is a medical doctor who operated a walk-in clinic in Brandon, Florida. On September 20, 2004, Bruce was dispatched to Galvez's clinic. Galvez and his wife were involved in a dispute with a teenage girl who had pulled her car into the parking lot of the clinic because the car was overheating. When the teenager asked the Galvezes if she could use the clinic's water spigot to fill her car's radiator, they asked that the teenager give Mrs. Galvez her driver's license. The Galvezes wished to copy the license in case the car was not removed from the premises in a timely

2

manner. A dispute between the Galvezes and the teenager arose when the teenager sought return of her license and the Galvezes refused.

When Bruce arrived, he entered the clinic and spoke to the Galvezes, who were still in possession of the teenager's driver's license. Bruce attempted to retrieve the driver's license but had difficulty doing so. According to Galvez, when Bruce's "loud, authoritative" requests for the license were not met with compliance, Bruce grabbed Galvez's right hand in an effort to handcuff him. (R.1-16, Ex. H at 3, 4.) Galvez admits to resisting Bruce, explaining that he was struggling against the officer in an attempt to retrieve the driver's license for Bruce from the top of a printer. (*Id.* at 4; Appellant's Br. at 42.) During this struggle, Bruce continued to try to handcuff him. (R.1-16, Ex. H at 4.) Bruce then pushed Galvez away from the printer and grabbed the license himself and, when Bruce did so, he also grabbed confidential patient records. (*Id.*) In an attempt to protect the confidentiality of these patient records, Galvez grabbed the license and records back from Bruce and

"unconsciously" put only the license in his pants pocket, under his lab coat.[1]  (*Id.*)

Bruce was then successful in handcuffing Galvez.  (*Id.*)

Under Galvez's version of the facts, after he was handcuffed, he cooperated with Bruce and offered no physical resistance.  (R.1-16, Ex. J at 365.)  Galvez claims that, as Bruce was removing him from the clinic, Galvez was "saying [']why are you doing this to me, . . . where are you going to take me, . . . why are you . . . getting me humiliated in front of these passing motorists who you never know that some of them are my friends and my patients . . . [?']" and he informed Bruce that he knew Bruce's chief.  (*Id.* at 364-65, 366.)

In Galvez's words, Bruce "forcefully dragged me out of the clinic, and with all his power and might began slamming the left side of my chest into the corner edge of the carport . . . . [Bruce] slammed me into the edge so hard that my body was pinned between [Bruce's] muscular stature and the concrete wall while [Bruce's] thighs pinned my knees to the lower portion of the carport.  [Bruce] slammed my chest several times while I cried out in pain and asked for help from passing

---

[1]Here, Galvez's testimony seems incredible.  On summary judgment, officer Bruce provided no testimony as to his version of the events.  And, whether Galvez intentionally put the license in his pocket does not change the result on this appeal.  Therefore, we do not consider whether this testimony of Galvez's is so inherently incredible that it can be disregarded in the current summary judgment posture.  *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 2008) (Under Federal Rule of Civil Procedure 56, "the court may disregard an offer of evidence that is too incredible to be believed.")

motorists."[2]  (R.1-16, Ex. H at 4.)  Galvez claims that, in response to being slammed against the wall by Bruce, he screamed for Bruce to stop hurting him and shouted to passing motorists to call attention to what he considered police brutality.  (R.1-16, Ex. J at 365-67.)  While Bruce and Galvez were outside the clinic, Bruce emptied Galvez's pockets and retrieved the driver's license.   (R.1-16, Ex. H at 5.)

Bruce charged Galvez with petit theft of the driver's license and resisting arrest without violence, both misdemeanors.  The charges were ultimately dropped.

Galvez claims that, as a result of the excessive force by Bruce, Galvez suffered significant psychological and physical injuries, including two fractured ribs and a leaking aneurysm.

## II.  PROCEDURAL HISTORY

Galvez sued Bruce, in a one-count complaint, alleging that Bruce is liable, pursuant to 42 U.S.C. § 1983, for violation of Galvez's Fourth and Fourteenth Amendment rights to be free from excessive force by state officers.  (R.1-7.) Significant discovery was taken.  Bruce filed a motion for summary judgment that Galvez opposed.  The district court granted summary judgment for Bruce on the

---

[2]This pushing or slamming of Galvez into the concrete wall outside the clinic is the sole factual basis for Galvez's excessive force claim.  While Galvez contends that Bruce was rough with him inside the clinic, he does not contend that the force Bruce used there was tortious.  (R.1-24 at 6 n.2.)

ground that he is entitled to qualified immunity. (R.1-25 at 18.) Galvez appeals that summary judgment.

## III. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same legal standards used by the district court. *See, e.g.*, *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 (11th Cir. 2001) (*quoting* Fed. R. Civ. P. 56(c)).

"[W]e 'must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.'" *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1280 (11th Cir. 2004) (*quoting Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (*quoting Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982) (citations omitted)).

## IV. ISSUE ON APPEAL

The sole issue on appeal is whether Deputy Bruce is entitled to qualified immunity for the acts of force that Galvez contends were excessive.

## V. DISCUSSION

Qualified immunity shields government officials from liability when they are performing discretionary functions and their actions "'[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). It "'allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Id.* (*quoting Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . .'" *Scott v. Harris*, 550 U.S. 372, ___ n.2, 127 S. Ct. 1769, 1773 n.2 (2007) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (emphasis omitted)).

The district court analyzed Bruce's qualified immunity defense by first resolving whether Bruce was acting within his discretionary powers when arresting Galvez; then by analyzing whether the facts, as presented by Galvez, could establish

7

a constitutional violation; then by asking whether the law, at the time of the arrest, clearly established Galvez's right to be free from the treatment he alleges. In performing this three-step analysis, the district court held that Bruce was acting within his discretionary powers when he arrested Galvez. (R.1-25 at 7.) It also found that there are disputed issues of material fact as to whether excessive force was used by Bruce because the parties presented conflicting evidence as to whether the force used by Bruce was reasonably proportionate to Bruce's need to secure Galvez. (*Id.* at 13.) Therefore, the district court held that the question of "'whether excessive force was used . . . is an issue of fact for the jury to resolve.'" (*Id.*) (*quoting Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007)). Nevertheless, the district court granted summary judgment to Bruce because it held that, even if excessive force had been used and Galvez's constitutional rights had been violated, the law at the time of Galvez's arrest "did not provide 'fair and clear notice' that Bruce's conduct was unlawful so that the violation would be 'apparent.'" (*Id.* at 17.) (*quoting Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002); *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)).

The parties do not dispute that Bruce was acting in the scope of his discretionary powers when he arrested Galvez. (Appellant's Br. at 29.) Once it is established that a defendant was acting within his discretionary authority, "the burden

shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (*citing Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). In the second step of the qualified immunity analysis, a court must resolve the question of whether a plaintiff has alleged a constitutional violation. The Supreme Court has instructed that courts should not proceed to the third step of the qualified immunity inquiry – whether the law at the time of the events clearly established such a violation – unless they find that, under the plaintiff's version of the facts, a constitutional violation occurred. In *Scott v. Harris*, the Supreme Court stated, "In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" 550 U.S. 372, ___, 127 S. Ct. 1769, 1774 (*quoting Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (*quoting Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156).

We consider de novo whether, under Galvez's version of the facts, his constitutional rights to be free from excessive force were violated. "'The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the

9

plain right to be free from the use of excessive force in the course of an arrest.'"

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th Cir. 2003) (*quoting Lee*, 284 F.3d at 1197). "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Lee*, 284 F.3d at 1197 (*quoting Graham v. Conner*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72 (1989)). Therefore, the question we ask is whether, under Galvez's version of the facts, Bruce "behaved reasonably in the light of the circumstances before him." *McCormick*, 333 F.3d at 1244 (*citing Vinyard*, 311 F.3d at 1347). "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198.

We find that, under Galvez's version of the facts, a jury could find that his constitutional rights to be free from excessive force during the arrest were violated. According to Galvez, after Bruce had him handcuffed, Galvez offered no physical resistance at all to Bruce. Indeed, Galvez contends that, after he was handcuffed, he cooperated with Bruce and did no more than "say" some things to Bruce.[3] Under

---

[3]The district court found that Galvez avoided the question of whether he cooperated with Bruce at this time, but Galvez's deposition testimony is clear.

        Q: Were you [Galvez] cooperating with him [Bruce]?

Galvez's version of the facts, on the way out of the clinic, he was simply asking Bruce why Bruce was arresting him and why Bruce was humiliating him and informing Bruce that he knew Bruce's boss.[4] Nonetheless, Bruce forcefully "dragged" Galvez outside and proceeded to repeatedly "slam" Galvez's body into the corner of a concrete structure, causing Galvez extreme pain, putting Galvez in fear for his life, and inflicting serious injuries. Considering the severity of the crimes, the danger the Plaintiff posed to the officer, and the risk of flight by the Plaintiff (the three factors identified by the Supreme Court in *Graham* and restated by this court in *Lee*), we note that the crimes with which Galvez was charged were not severe; petit theft and resisting arrest without violence are both misdemeanors; and, under Galvez's version of the facts, once he was handcuffed, he posed no danger to officer Bruce and no risk of flight. Thus, crediting Galvez's story, as we must on summary

> A: Yes. When he led me all the way to the corner of the carport where there is already concrete, he was able to get me there. Otherwise, if I did not cooperate, I could have been– me and him could have been rolling around the ground, you know . . . .

(R.1-16, Ex. J. at 365.)

[4]Relying on other witnesses' testimony, the district court found Galvez "was screaming at passing motorists about police brutality and Rodney King while Bruce led him outside" and "Galvez continued to scream at passing motorists for help before and while the force was exerted." (R.1-25 at 9, 17.) This is not Galvez's story. Galvez admits to shouting during the encounter with Bruce, but he maintains that his shouting consisted of crying for Bruce to stop hurting him and accusing Bruce of police brutality in order to call the attention of passers-by to Bruce's actions of slamming him against the wall. Galvez's testimony, then, supports an inference that he was subjected to the force prior to shouting.

11

judgment,[5] we find that the force of repeatedly slamming Galvez into a corner of a concrete structure after he was handcuffed and compliant was disproportionate to the need for that force. Thus, on the facts as alleged by Galvez, a jury could find that Bruce violated Galvez's constitutional rights.

We now consider whether Galvez has demonstrated that, at the time of the events in this case, the state of the law was such that it would have been clear to Bruce that his actions violated Galvez's rights. "[T]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). Galvez does not contend that any federal statute or constitutional provision is specific enough to clearly establish that Bruce's conduct was unlawful. Thus, Galvez must demonstrate that caselaw existing at the time of Bruce's actions either establishes a broad, applicable principle of law or has materially similar facts such that it would put Bruce on notice that his actions were unlawful.

---

[5]As we recognized in *McCormick*,"We have repeatedly said that 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" 333 F.3d at 1244 n.14 (11th Cir. 2003) (*quoting Lee*, 284 F.3d at 1190; *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)). We note, as did the district court, that other witnesses deposed in this case controvert Galvez's testimony regarding whether he continued to resist Bruce physically while outside of the clinic, whether he was shouting throughout the encounter, and whether Bruce's actions were necessary to control Galvez.

Galvez argues that *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000), and *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), are materially similar cases to his and that these cases establish and apply the principle that fully secured arrestees cannot be subjected to force like that inflicted on him by Bruce. In *Slicker*, we denied qualified immunity to officers who repeatedly slammed a handcuffed, nonresisting arrestee's head into the pavement, kicked him while he lay on the ground, and ultimately knocked him unconscious. *Slicker*, 215 F.3d at 1233. In *Lee*, we denied qualified immunity to an officer who slammed an arrestee's head against the trunk of a car though the plaintiff never resisted the officer in any way and "posed no threat at all to the officer or to anyone else and no risk of flight." *Lee*, 284 F.3d at 1191, 1198.

We judge Bruce's conduct "from the perspective of a reasonable officer on the scene, rather than through the lense of hindsight . . . ." *Kesinger ex rel. Kesinger v. Herrington*, 381 F.3d 1243, 1249 (11th Cir. 2004); *see also Vinyard*, 311 F.3d at 1347 (the force used "must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (internal quotation marks and citations omitted).

As discussed above, under Galvez's version of the facts, he was a fully-secured, cooperative, misdemeanor arrestee at the time Bruce slammed him into the

13

wall.[6] Under these circumstances, we agree with Galvez that our decisions in *Slicker* and *Lee* should have put Bruce on notice that he would be violating Galvez's consitutional rights by repeatedly slamming Galvez's body into the corner of a concrete wall with force sufficient to break his ribs and cause a leaking aneurysm. The lesson of *Slicker* and *Lee* is that qualified immunity is not available to officers who subject arrestees to significant force after "the arrest ha[s] been fully effected, the arrestee completely secured, and all danger vitiated." *Lee*, 284 F.3d at 1199-1200; *see also Slicker*, 215 F.3d at 1233. Use of significant force on an arrestee who would be considered by any reasonable police officer to be fully secured is "wholly unnecessary to any legitimate law enforcement purpose" and therefore unlawful. *Lee*, 284 F.2d at 1199. Under Galvez's version of the facts, Bruce should have considered his use of force similar to that in *Slicker* and *Lee*. Given the state of the law in 2004,

---

[6]Because it credited other witness testimony that conflicts with Galvez's, the district court came to the conclusion that Galvez was not fully secured at the time Bruce used force. (R.1-25 at 10, 16.) That factual determination led the district court to find that the caselaw Galvez cites regarding fully-secured arrestees is inapplicable. (*Id.* at 16.)

We agree that, if Galvez was, in fact, engaged in the verbal tirade that some of the other witnesses describe, his case would be different from those of the plaintiffs in *Slicker* and *Lee*. Under those circumstances, Galvez may not have been a fully-secured arrestee. And, though Galvez argues otherwise, if he were engaged in a verbal tirade as he was led out of the clinic, we would also find material differences between this case – in which Galvez had just been handcuffed, was still standing, and was being led from behind by the officer – and that of the plaintiff in *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). In *Vinyard*, we denied an officer qualified immunity because his use of force could not be justified against a verbally protesting arrestee who was locked in the partitioned passenger compartment of his police vehicle. *Id*. at 1355.

it should have been clear to Bruce that repeatedly slamming a fully secured and compliant Galvez against the corner of a concrete wall, with force sufficient to break Galvez's ribs and cause a leaking aneurysm, was unlawful.[7]

## VI.  CONCLUSION

For the reasons stated above, Bruce is not entitled to qualified immunity at the summary judgment stage.  We vacate the summary judgment and remand the case to the district court for further proceedings.

VACATED AND REMANDED.

---

[7]Galvez also argues that Bruce's conduct so obviously violated the Constitution that caselaw was unnecessary to put Bruce on notice that his actions were unlawful.  Because we find that *Slicker* and *Lee* put Bruce on notice that his actions were unlawful, we do not decide whether this is a case where the officer's actions were "'so far beyond the hazy border between excessive and acceptable force [that every objectively reasonable officer] had to know he was violating the Constitution even without caselaw on point.'" *Vinyard*, 311 F.3d at 1355 (*quoting Priester*, 208 F.3d at 926; *Smith v. Maddox*, 127 F.3d 1416, 1419 (11th Cir. 1997)) (alteration in original).