[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11821
Non-Argument Calendar

_____

D. C. Docket No. 07-21139-CV-MGC

ERIK SANCHEZ,

Plaintiff-Appellee,

versus

HIALEAH POLICE DEPARTMENT, et al.,

Defendants,

R. DEL NODAL,
L. GARRIDO,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 16, 2009)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

City of Hialeah Police Officers Del Nodal and Garrido appeal from the district court's interlocutory order denying their motion for summary judgment on qualified immunity grounds in Erik Sanchez's pro se civil rights action, brought pursuant to 42 U.S.C. § 1983. Sanchez alleged that Officer Del Nodal violated his Fourth Amendment right to be free from excessive force by repeatedly striking him in the head with a baton, and that Officer Garrido failed to intervene.[1] On appeal, the defendants argue that: (1) Officer Del Nodal was entitled to qualified immunity because his use of non-deadly force did not violate Sanchez's clearly-established right to be free from excessive force; and (2) Officer Garrido was entitled to qualified immunity on Sanchez's excessive force claim, because there is no derivative liability for failing to intervene when the officer accused of excessive force is entitled to qualified immunity, and because Officer Garrido was not in a position to stop Officer Del Nodal. After thorough review of the record and the parties' briefs, we affirm the district court's denial of qualified immunity.[2]

We have interlocutory appellate jurisdiction under 28 U.S.C. § 1291 "over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996);

---

[1] The district court ultimately dismissed Sanchez's claims against all other defendants, and those claims are not at issue in this appeal.

[2] As a result, we decline to exercise our pendent appellate jurisdiction over Sanchez's state law battery claim, which the district court has yet to address in the first instance.

2

accord Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (same). This includes the

district court's determination in this case that Officers Del Nodal and Garrido were

not entitled to qualified immunity because their actions violated Sanchez's clearly-

established right to be free from excessive force. Crenshaw v. Lister, 556 F.3d

1283, 1288-89 (11th Cir. 2009).

> In conducting de novo review of the district court's disposition of a
> summary judgment motion based on qualified immunity, we are
> required to resolve all issues of material fact in favor of the plaintiff.
> We then answer the legal question of whether the defendant is entitled
> to qualified immunity under that version of the facts. Indeed, we
> approach the facts from the plaintiff's perspective because the issues
> appealed here concern not which facts the parties might be able to
> prove, but, rather, whether or not certain given facts showed a
> violation of clearly established law.

Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) (quotations, citations, and

alterations omitted).

"[Q]ualified immunity offers complete protection for government officials

sued in their individual capacities as long as their conduct violates no clearly

established statutory or constitutional rights of which a reasonable person would

have known." Oliver v. Fiorino, __ F.3d __, No. 08-15081, 2009 WL 3417869, at

*4 (11th Cir. Oct. 26, 2009) (quotation omitted). "The purpose of qualified

immunity is to allow officials to carry out their discretionary duties without the

fear of personal liability or harassing litigation, protecting from suit all but the

3

plainly incompetent or one who is knowingly violating the federal law." Id. (citations and quotations omitted).

Because it is undisputed that Officers Del Nodal and Garrido acted within their discretionary authority, the burden shifts to Sanchez to show that qualified immunity should not apply. Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009), cert. petition filed, (No. 09-420) (U.S. Oct. 5, 2009). "In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation. Second, the court analyzes whether the right violated was clearly established at the time of the violation." Id. (citations omitted); but see Pearson v. Callahan, 129 S.Ct. 808, 818 (2009) (concluding that, while Saucier's two-step inquiry is "often appropriate," it is not "mandatory in all cases").

"We analyze a claim of excessive force under the Fourth Amendment's 'objective reasonableness' standard." Oliver, 2009 WL 3417869, at *5 (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). Thus, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). In this respect, "[t]he 'reasonableness' of a particular use of force must be judged from the

4

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (quotations omitted). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Additional considerations include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (quotation omitted).

Relying on the above factors, we have recently issued several published decisions addressing excessive force, thus providing useful guidance for analyzing the present case. See Oliver, 2009 WL 3417869, at *5-7 (allowing an excessive force claim to proceed where an officer repeatedly shocked with a taser an

5

individual who was not accused or suspected of a crime, posed no immediate threat to the officers or others, did not resist the officers, and ultimately died as a result); Crenshaw, 556 F.3d at 1292-93 (concluding that an officer's use of a canine dog against a fleeing armed robbery suspect who had concealed himself in a dark wooded area did not constitute excessive force); Galvez v. Bruce, 552 F.3d 1238, 1243-44 (11th Cir. 2008) (allowing an excessive force claim to proceed where an officer slammed into a concrete structure an arrestee who was suspected of having committed misdemeanors, was handcuffed, posed no risk of danger or flight, and offered no physical resistence); Reese v. Herbert, 527 F.3d 1253, 1273-74 (11th Cir. 2008) (allowing an excessive force claim to proceed where officers beat, twisted the arm of, applied a pressure point technique to, and sprayed with pepper spray an arrestee who was suspected of having committed a misdemeanor, did not pose an immediate threat of harm, and was not actively resisting or evading arrest); Hadley, 526 F.3d at 1330 (allowing an excessive force claim to proceed when an officer punched in the stomach an arrestee who was handcuffed, did not pose a danger to the officer, and was not resisting); Lee, 284 F.3d at 1998 (allowing an excessive force claim to proceed when an officer slammed into the hood of a car an arrestee who was handcuffed, not posing a threat to the officer, and not posing a flight risk). Notably, we consistently have allowed an excessive force claim to go

forward where an arrestee was handcuffed, posed no risk of danger to the officer, and was not resisting arrest.

Based on this case law, we do not agree with the defendants' claim that the district court erred in concluding that Officer Del Nodal was not entitled to qualified immunity. Even if we accept that Officer Del Nodal's reaction was objectively reasonable when he opened the car door, punched Sanchez in the eye, and sprayed him with mace after Sanchez broke the police car window, the officers' conduct did not end there. Instead, under Sanchez's version of the incident, Officer Garrido then pulled Sanchez from the car, and Officer Del Nodal ordered him to the ground. Yet, before Sanchez had a chance to express his concerns about the broken glass on the ground, let alone comply with the instruction, Officer Del Nodal repeatedly struck him with an ASP baton,[3] apparently without first assessing whether the mace had already subdued him. Indeed, according to Sanchez, he did not physically resist the officers once pulled from the car. Based on these allegations -- that Officer Del Nodal repeatedly struck Sanchez with an ASP baton after Sanchez ceased all resistance -- we hold that a jury, taking the facts in a light most favorable to Sanchez, could reasonably

---

[3] An "ASP" refers to an expandable, tactical baton sold to law enforcement personnel by Armament Systems and Procedures, Inc. See http://www.asp-net.com/batons.html.

7

find that Officer Del Nodal violated Sanchez's right to be free from excessive force.

Several other facts also weigh heavily in Sanchez's favor. He was arrested for driving with a suspended license, a minor and non-violent offense. In addition, according to Sanchez, he was handcuffed -- with his hands behind his back -- and in police custody at all relevant times, thus posing a minimal threat to the safety of the officers and others. Indeed, the only relevant time that Sanchez was not detained inside the police car was when Officer Garrido forcibly removed him. It is also noteworthy that Officer Del Nodal told Sanchez in the car that if he broke the window, he would "get his ass kicked," indicating that Officer Del Nodal's subsequent use of force was not designed to prevent Sanchez from escaping or to protect himself or the public. Finally, it is significant that, under Sanchez's version of the incident, Officer Del Nodal struck him 10 times with the ASP -- with 5 blows going to his head -- resulting in at least two head lacerations requiring 15 metal staples to close. Regardless of whether the beating also caused Sanchez heart abnormalities, his head injuries alone were undeniably serious and could have been life-threatening.

The defendants rely heavily on Parks v. City of Carrollton, No. 05-11427, 2005 WL 2219072 (11th Cir. Sept. 14, 2005) (unpublished), but their reliance on

8

this case is without merit because, in addition to being an unpublished opinion, it is factually distinguishable from Sanchez's version of the incident. The operative facts in Parks were that: a handcuffed arrestee in the back of a police car began kicking the windows; the officer was aware that arrestees in the past had kicked out the windows and escaped; the officer therefore responded by attempting to subdue the arrestee by locking him in his seat; the arrestee yelled, struggled with the officer, spit in his face, and ultimately bit the officer's finger, drawing blood; and, in an attempt to subdue the arrestee, the officer punched him two to four times, resulting in only a bloody nose. Id. at *1-2, *6-7. Thus, the only similarity between Parks and the facts alleged here is that, in both cases, a handcuffed arrestee was kicking the windows while in the back of a police car. Unlike Parks, however, and viewing the facts from Sanchez's perspective, Officer Del Nodal repeatedly struck Sanchez with a baton after Sanchez had already been subdued by mace, and Sanchez received serious head injuries as a result.

In sum, a jury could reasonably conclude that Officer Del Nodal's use of the ASP constituted excessive force under the circumstances alleged by Sanchez, because he was arrested for a minor, non-violent crime, he did not pose a serious threat to anyone's safety, he did not attempt to escape, he was no longer resisting at the time he was beaten, he was not given an opportunity to comply with the

officers' instructions to get on the ground, and he suffered serious head injuries. Accordingly, the district court correctly determined that Officer Del Nodal violated Sanchez's constitutional right to be free from excessive force.

We further conclude that Officer Del Nodal's alleged use of excessive force violated a clearly established right at the time of the incident in June 2003. We have recently held that our decisions in Lee v. Ferraro, 284 F.3d at 1198 (holding, in 2002, that a police officer used excessive force where the plaintiff had committed a minor crime, did not pose any threat to the officer or others, and was not actively resisting or attempting to flee), and Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (holding that police officers used excessive force by severely beating a handcuffed individual who neither resisted nor attempted to flee), clearly established that repeatedly slamming a fully secured and compliant misdemeanor arrestee into a concrete wall constituted excessive force. Galvez, 552 F.3d at 1244-45; see also Hadley, 526 F.3d at 1333 ("We hold that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002."). Thus, our case law clearly established before June 2003 that, under the circumstances alleged by Sanchez, Officer Del Nodal's conduct constituted excessive force. For this reason, the district court correctly declined to grant Officer Del Nodal qualified immunity, and we therefore need not determine

10

whether Officer Del Nodal's "conduct [was] so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis, 561 F.3d at 1292.

We likewise conclude that Officer Garrido is not entitled to qualified immunity from Sanchez's claim that Officer Garrido, despite being in clear view and restrainable range, failed to intervene and stop Officer Del Nodal's use of excessive force. Under our case law, "an officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." Hadley, 526 F.3d at 1331.

To begin with, because we conclude that Officer Del Nodal used excessive force under Sanchez's version of events, Officer Garrido can be held liable if he was in a position to intervene. See Crenshaw, 556 F.3d at 1293-94. In addition, the defendants' argument that Officer Garrido was not in a position to intervene because he was on opposite sides of the car when the incident started is of little relevance to our determination. According to Sanchez, Officer Garrido was in close proximity to Officer Del Nodal on the same side of the car when Officer Del Nodal began beating Sanchez with the ASP. Thus, under the facts alleged by

11

Sanchez, Officer Garrido could be held liable for failing to intervene and stop Officer Del Nodal's use of excessive force. Moreover, an officer's duty to intervene in this regard was clearly established in this Circuit well before June 2003. See Priester, 208 F.3d at 927 ("Nor do we think particularized case law is necessary to overcome [the defendant's] claim of qualified immunity. That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994.").

For these reasons, the district court correctly concluded that Officers Del Nodal and Garrido were not entitled to qualified immunity.

**AFFIRMED.**