[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10857
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00323-JAJ-TFM


MICHAEL DAVIDSON,

                                                  Plaintiff - Appellant,

versus

CITY OF OPELIKA, ALABAMA,
PHILLIP HANCOCK,
JOHN MCEACHERN,

                                                  Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 17, 2017)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Michael Davidson was shot by Opelika, Alabama police officer Phillip Hancock just after exiting his vehicle alongside the highway. Davidson was unarmed. He survived the incident but was grievously injured. Davidson subsequently sued Hancock, Opelika Chief of Police John McEachern, and the City of Opelika for claims arising from the shooting. The shooting was undeniably a tragedy, but it resulted from the unique and lamentable position of Davidson's hands holding his wallet the moment before the shooting. After careful consideration and review of a video recording of the shooting, viewing the evidence in the light most favorable to Davidson, we conclude that a reasonable officer in Hancock's position would have feared for his life. Accordingly, we affirm the district court's grant of summary judgment based on qualified immunity in favor of Hancock on all claims.

## I.    FACTUAL BACKGROUND

After a caller reported an erratic driver on Interstate 85 near Opelika, Hancock, who was on patrol that night, was dispatched to the scene.[1] The driver was Davidson, an active duty member of the United States Air Force, who was travelling in his sport utility vehicle on his way to Johnson-Seymour Air Force Base in North Carolina. Just before Hancock caught up with Davidson,

---

[1] On appeal from the district court's summary judgment rulings, we view the evidence related to those claims in the light most favorable to Davidson, the non-movant. *See Valderrama v. Rousseau*, 780 F.3d 1108, 1110 n.1 (11th Cir. 2015).

2

Davidson's vehicle had collided with an 18 wheel truck. When Hancock arrived, both the truck driver and Davidson had pulled off the road and were stopping their vehicles. The video reflects that after Davidson's vehicle came to a stop, its rear lights flashed, indicating that the he had placed it in park.

Hancock parked his police cruiser close to the left-rear bumper of Davidson's vehicle, about a car length behind it, and trained his spotlight on the driver-side front door. Hancock then exited his cruiser with his gun drawn.[2] Davidson attempted to exit his vehicle but had some trouble with the door pressing back against him because he was parked at an angle with the passenger side downhill off the side of the road. What happened over the course of the next three seconds is the focus of this case.

As Davidson pushed his way out, he withdrew his wallet from his pocket. Just as Davidson managed to exit the vehicle, Hancock yelled, "Let me see your hands!" Hancock yelled again, "Let me see your hands!" Simultaneously, Davidson brought his hands together and then extended them outward toward Hancock. Davidson's wallet was visible over the top of his clasped hands. Hancock fired two shots in rapid succession as he finished his second command to Davidson. One shot hit the ground while the other hit Davidson. As Hancock

---

[2] The district court appears to have accepted Hancock's assertion that he did not unholster his weapon until after warning Davidson to show his hands. There is a witness statement to the contrary in the record, however, and we are bound to view all facts and draw all reasonable inferences in Davidson's favor.

3

fired his first shot, Davidson's hands moved apart, outward, and then above his shoulders.

The shot that hit Davidson entered his lower abdomen, transected his colon and internal iliac artery, and punctured his small intestine. Davidson subsequently sued Hancock, Chief McEachern, and the City of Opelika in federal district court for claims arising out of the shooting. He asserted claims under 42 U.S.C. § 1983 against Hancock for excessive force and against McEachern and City of Opelika for failing to train Davidson. He also brought state-law assault and battery claims against Hancock. The district court granted summary judgment to the defendants. It concluded that with respect to the § 1983 excessive force claim Hancock was entitled to qualified immunity because even viewing the evidence in the light most favorable to Davidson there was no constitutional violation. The court rejected the § 1983 failure to train claim because there was no constitutional violation. And it ruled that the state law claims failed because Hancock was entitled to immunity. This appeal followed.

## II.    STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgement *de novo*, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). We view the facts in the light most favorable to the nonmoving party. *See id.* We must also draw "all reasonable inferences in

4

favor of the party opposing summary judgment." *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Mere speculation is insufficient to create a genuine issue of material fact.  *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## III.    DISCUSSION

Davidson argues that the district court erred in granting summary judgment to the defendants because the court failed to view the evidence and draw all reasonable inferences in his favor, and that when the evidence is viewed in the light most favorable to him, there are disputed issues of material fact making summary judgment inappropriate.  We conclude that the district court correctly granted summary judgment in the defendants' favor.  The video evidence in this case is conclusive.  Although we do view the facts and draw reasonable inferences in Davidson's favor, the Supreme Court has instructed us that when there is a reliable video recording of disputed events, we are to view facts "in the light depicted by the video[]."  *Scott v. Harris*, 550 U.S. 372, 381 (2007).  Here, that video proves that a reasonable officer in Hancock's position would fear for his life because of the unique way in which Davidson extended his wallet in his clasped hands.

5

## A.    The Section 1983 Excessive Force Claim against Hancock

Davidson argues that the district court erred in granting qualified immunity to Hancock because the evidence viewed in the light most favorable to him shows that Hancock used excessive force.  "Title 42 U.S.C. § 1983 provides a cause of action against '[e]very person who, under color of any statute of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  But qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To be entitled to qualified immunity, a government official "bears the initial burden of showing he was acting within his discretionary authority."  *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (internal quotation marks omitted).  The parties agreed that Hancock was engaged in a discretionary

6

function.  The burden thus shifted to Davidson to show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

Davidson argues that Hancock used excessive force when the officer shot him as Davidson was exiting his vehicle, violating his Fourth Amendment right to be free from unreasonable seizure.  *See Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010).  We analyze a claim of excessive force under the Fourth Amendment's "objective reasonableness" standard.  *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015).  In determining whether the use of force was "objectively reasonable," we carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests[] against the countervailing governmental interests at stake under the facts of the particular case."  *Id.* (internal quotation marks omitted).  "To satisfy the objective reasonableness standard imposed by the Fourth Amendment, [Hancock] must establish that the countervailing government interest was great."  *Penley*, 605 F.3d 843, 850 (11th Cir. 2010).  "[A]nalysis of this balancing test is governed by (1) the severity of the crime at issue; (2) whether [Davidson] posed an immediate threat to [Hancock] or others; and (3) whether he actively resisted arrest."  *Id.* at 850–51.  Taking the evidence in the light most favorable to Davidson to the extent supported by the record, these factors lead to

7

the conclusion that Hancock did not violate Davidson's Fourth Amendment rights by using an objectively unreasonable amount of force.

Under the circumstances, Hancock could not reasonably have suspected that Davidson was guilty of any violent crime, so the first factor weighs against Hancock. At most, the reports of Davidson's erratic driving gave Hancock arguable probable cause to believe that Davidson was driving under the influence of alcohol or a controlled substance. There was no reason to suspect that he might be armed or violent.

Nor, skipping ahead, does the third factor support Hancock. When he arrived at Davidson's vehicle, it was already coming to a stop by the side of the highway behind an 18 wheel truck that had also pulled off the road. After the vehicle came to a stop, its rear lights flashed, indicating that the driver had placed it in park. The reasonable inference to be drawn from these facts was that Davidson pulled off the road after an accident with the truck to exchange information with its driver. There was no reason whatsoever to believe that Davidson was resisting Hancock.

But the second factor—whether Davidson posed an immediate threat to Hancock—decides this case. "[T]he second factor can be reduced to a single question: whether, given the circumstances, [the suspect] would have appeared to reasonable police officers to have been gravely dangerous." *Penley*, 605 F.3d at

8

851 (second alteration in original) (internal quotation marks omitted).  The district court determined that Davidson presented such a threat because "[a]fter reaching behind himself in a motion akin to upholstering [sic] a weapon, Davidson stood clutching a black object with both hands, pointing towards Officer Hancock as though he was preparing to shoot."  Order Granting Def.'s Mot. for Summ. J. 8 (Doc. 104).[3]  The positions of the object and Davidson's hands—established by the video—are key.  To be clear, Davidson exiting his vehicle, reaching behind himself, and holding an unidentified object would not have been sufficient to make Hancock's use of deadly force reasonable under the circumstances.  But the unusual position of the dark object in Davidson's outstretched and clasped hands would have led a reasonable officer to believe that Davidson was pointing a gun at him.  For that reason, we concur with the district court that Davidson objectively posed a grave and immediate threat to Hancock.

Davidson argues that Hancock used excessive force because he posed no threat to the officer.  He contends that his hands were not in a shooting position.  Rather, he stretched out his hands to comply with Hancock's command, "Let me see your hands!"  And he maintains that Hancock should have expected a driver preparing to exchange information after an accident to retrieve his wallet from his

---

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

9

pocket.  Davidson disputes that there was any rapidly developing, uncertain, and tense situation until Hancock created one.

But these arguments are unavailing.  "[T]he Supreme Court has cautioned that [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Penley*, 605 F.3d at 850 (second alteration in original) (internal quotation marks omitted).  We share the district court's concern that Davidson was shot so soon after he exited his vehicle.  Further, we agree with Davidson that Hancock's imprecise language contributed to the uncertain nature of the situation.  But when we evaluate Hancock's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," we conclude that the force used was not excessive.  *Id.* (internal quotation marks omitted).

Davidson has failed to establish that Hancock violated his constitutional rights, so we need not examine whether those rights were clearly established.  The district court properly granted summary judgment in favor of Hancock on the basis of qualified immunity.[4]

---

[4] Accordingly, we also uphold the district court's grant of summary judgment in favor of the City of Opelika and McEachern because "a supervisor may not be held liable under section

10

**B.      The State Law Assault and Battery Claim against Hancock**

Davidson also sued Hancock for committing assault and battery under Alabama law.  The district court granted summary judgment in favor of Hancock based on the Alabama statute granting state agents immunity from civil liability for acts "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code. § 6-5-338(a).  The parties agree that Hancock acted discretionarily and within the scope of his law enforcement duties.  Davidson, however, points to Alabama case law holding that "a police officer loses this immunity when he 'acts willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority or under a mistaken interpretation of the law.'"  *Morton v. Kirkwood*, 707 F.3d 1276, 1285 (11th Cir. 2013) (alteration in original) (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000)).

Davidson argues that "Hancock's use of deadly force against [him] was 'so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith.'" Appellant's Br. at 56 (quoting *Couch v. City of Sheffield*, 708 So. 2d 144, 153 (Ala. 1998)).  But the only case Davidson cites in support of this argument, *Brown v. City of Huntsville*, 608 F.3d 724 (11th Cir. 2010), is

---

1983 unless the supervised official committed an underlying violation of a constitutional right." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013).

11

inapposite.  In *Brown*, we held that an officer's use of pepper spray against an unarmed and compliant driver "was done intentionally, gratuitously, and in violation of [the victim's] clearly established constitutional rights, supporting an inference that [the officer] acted willfully and in bad faith."  *Id.* at 742.  Here, by contrast, video evidence demonstrates that Hancock's actions were neither gratuitous nor in violation of Davidson's clearly established constitutional rights.  Considered in the light most favorable to Davidson, the evidence does not give rise to an inference that Hancock acted in bad faith.  We therefore affirm the district court's grant of summary judgment on Davidson's assault and battery claim.

## IV.    CONCLUSION

With all facts, as supported by video evidence, viewed in a light favorable to Davidson, Hancock's use of force was objectively reasonable.  In so holding, we do not want to understate the suffering Davidson endured as the result of Hancock's disastrous mistake.  But the positions of Davidson's wallet and hands the moment before the shooting mean that mistake did not violate Davidson's constitutional rights.  The district court's grant of summary judgment was proper.

For these reasons, the judgment of the district court is **AFFIRMED**.

12