[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12059

_____

D.C. Docket No. 0:15-cv-60129-WPD

FRANK VOUDY,

Plaintiff - Appellant,

versus

SHERIFF OF BROWARD COUNTY FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 13, 2017)

Before MARCUS, JILL PRYOR, and SILER,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Appellant Frank Voudy, a white deputy in the Broward County Sheriff's Office, appeals the district court's grant of summary judgment to Sheriff Scott Israel on Voudy's claim that the Sheriff discriminated against him on the basis of race when the Sheriff failed to promote him to Sergeant. The district court determined that Voudy failed to make out a *prima facie* case of discrimination. Because Voudy did in fact make out a *prima facie* case of discrimination and the Sheriff failed to articulate a legitimate, non-discriminatory reason for Voudy's non-promotion, we reverse the district court's judgment.

## I.    BACKGROUND

Frank Voudy is a white officer in the Broward County Sheriff's Office (BSO). Voudy has been a Deputy Sheriff since 1997 and has been eligible for a promotion to Sergeant since 2002 but has never been promoted. In 2012, Voudy took the Sergeant's Exam, which consisted of a multiple-choice test, a structural interview, and an oral presentation. The scores of each segment were added together and each eligible individual taking the exam was ranked based on his or her total score. Voudy ranked 20th of the 56 individuals eligible for promotion to Sergeant. Thirty promotions were made based on the 2012 eligibility list. Of those, 23 were white, three were Hispanic, three were black, and one was multi-racial. Voudy was the second highest ranked officer who was not ultimately promoted.

2

The Collective Bargaining Agreement (CBA) between BSO and the Police Benevolent Association governed the promotion process.  The CBA required that five out of every six Sergeant openings be filled from the then-existing top five scores on the Sergeant's exam.  This was called the Rule of Five.  For Rule of Five picks, every time a new Sergeant was selected, the next highest person on the eligibility list moved into the top five.  It is therefore possible that a candidate may be passed over continuously even though he or she scored very highly on the Sergeant's Exam.  The sixth position is filled at the Sheriff's discretion without regard for the Rule of Five.

Colonel John Dale oversaw the 2012-2014 promotion process at BSO.  He explained that the committee determining promotions followed the Rule of Five and that for every sixth pick, Sheriff Israel ultimately made the final choice from the entire list of eligible officers, as opposed to the top five scorers remaining on the list.  Dale testified that for the sixth pick, BSO "looked at it as a flat list" without regard for ranking.  He explained that for the sixth pick, BSO considers each officer's file and the comments of his or her supervisors.  BSO also considers each officer's training record, which to BSO indicates that the employee is interested in developing his or her skill set, as well as the officer's last three performance evaluations, attendance, and disciplinary history.  Dale further

3

testified that in making promotion decisions, BSO neither had an indication of each officer's race or ethnic background nor looked at photographs.

Two black officers ranked lower than Voudy based on their total scores on the Sergeant's Exam—Jeremiah Cooper and Berthill Thomas—were promoted over him as "sixth picks" by the Sheriff. They were ranked 47th and 50th, respectively.[1] Although Voudy scored better than Cooper and Thomas on the Sergeant's Exam and had substantially more law-enforcement experience, Cooper and Thomas had better qualifications than Voudy with regard to some of BSO's considerations. Nonetheless, Dale could not recall the reasons why Thomas and Cooper were promoted over Voudy, explaining that it is difficult to remember why any individual promotion decision was made because so many promotions—to Sergeant, but also to Captain, Major, and Lieutenant—are determined around the same time.

Voudy had a more extensive disciplinary history than either Cooper or Thomas. Internal Affairs had lodged three cases against Voudy in his time on the force, two in 2000 and one in 2004. Each resulted in a written reprimand. By contrast, Thomas had been disciplined twice in his time on the force, both times

---

[1] We note that the ranking allowed for ties between two officers—for example, there were two officers ranked seventh, with another officer ranked eighth. So Voudy's ranking of 20th does not mean that there were only 19 officers ranked higher than he was. The precise number of officers with a higher rank than Voudy, Cooper, or Thomas is immaterial to Voudy's claim, however: there is no doubt that Voudy was ranked substantially higher than Cooper or Thomas.

resulting in counseling and training.  Cooper had been disciplined once, resulting in counseling.

Moreover, unlike Voudy, Cooper and Thomas had specialized training certifications.  Thomas had cross-certification in Law Enforcement and Detention/Corrections and successfully completed a Police Motorcycle Operator Course.  Cooper was certified as a Field Training Officer after extensive coursework and also completed several months of training in the District Criminal Investigations Unit.

Thomas also had more positive performance evaluations than Voudy. Voudy's 2010-2013 performance evaluations showed an approximately even mix of "Exceeds Expectations" ratings and "Meets Expectations" ratings.  By contrast, in 2011-2012 and 2012-2013, Thomas received "Exceeds Expectations" ratings for 8 of 10 categories, and in 2010-2011 he received "Exceeds Expectations" in all 10 categories.  Cooper's last three performance evaluations were on par with Voudy's. Neither Cooper's nor Thomas's performance evaluations contained negative comments from their supervisors, but Voudy's 2011-2012 performance evaluation noted that he could "increase his initiative and work output in the area of FI cards and arrests," and his 2012-2013 evaluation provided that Voudy's "pro-activity is

5

not high as it pertains to arrests and traffic enforcement."  Voudy Performance

Evaluations, Doc. 21-16 at 3, 5.[2]

Voudy filed suit against the Sheriff alleging that Cooper and Thomas were

selected over him because of race, in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Florida Civil Rights Act (FCRA), Fla.

Stat. § 760.10 *et seq.*[3]  The district court granted summary judgment to the Sheriff,

concluding that Voudy failed to establish a *prima facie* case of discrimination.

Voudy now appeals.

## II.    STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment de novo,

applying the same legal standards used by the district court."  *Galvez v. Bruce*,

552 F.3d 1238, 1241 (11th Cir. 2008).  We view the evidence and all factual

inferences arising from the evidence in the light most favorable to the nonmoving

party. *See id.*  Summary judgment is appropriate when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  Mere speculation is insufficient to create a genuine

---

[2] Citations to "Doc. __" refer to numbered docket entries in the district court record in this case.

[3] Voudy also raised age discrimination claims against the Sheriff under the Age Discrimination in Employment Act and FCRA.  The district court granted summary judgment to the Sheriff on these claims.  Voudy does not appeal that decision.

dispute of material fact.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th

Cir. 2005).

### III.    DISCUSSION

Because Voudy has provided no direct evidence of discrimination, we assess

his Title VII claim under the burden shifting framework outlined in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]  "Under the *McDonnell Douglas*

framework, a plaintiff first must show an inference of discriminatory intent, and

thus carries the initial burden of establishing a *prima facie* case of discrimination."

*Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir.

2006).  "The plaintiff's successful assertion of a *prima facie* case creates a

rebuttable presumption that the employer unlawfully discriminated against

h[im]."  *Id.* (internal quotation marks omitted).  "Second, if the plaintiff

successfully demonstrates a *prima facie* case, the burden then shifts to the

employer to produce evidence that its action was taken for a legitimate, non-

discriminatory reason."  *Id.*  "[O]nce the employer meets its burden of production

by proffering a legitimate, non-discriminatory reason, thereby rebutting the

presumption of discrimination, [ ] [our] inquiry proceeds to a new level of

specificity, in which the plaintiff must show that the proffered reason really is a

pretext for unlawful discrimination."  *Id.* (internal quotation marks omitted).

---

[4] We evaluate Voudy's FCRA claim under the same standards as his Title VII claim.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

The district court determined that Voudy failed at the first stage—that is, it ruled that Voudy failed to make out a *prima facie* case of discrimination.  In doing so, however, the district court applied the incorrect legal standard.  The district court required Voudy to show that (1) he was a member of a protected class, (2) he was qualified and applied for the promotion, (3) he was rejected despite his qualifications, and (4) other equally or less qualified employees outside of the protected class were promoted.  D. Ct. Op., Doc. 33 at 4.  It then concluded that Voudy failed to make out a *prima facie* case because he failed to show that he was equally or more qualified than Cooper or Thomas.

This was error.  In *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998), we addressed conflicting panel opinions concerning the elements of a *prima facie* case in failure to promote cases.  While a number of our decisions employed the standard used by the district court in this case—requiring plaintiffs to show, at the *prima facie* case stage, that other equally or less qualified employees were promoted over them—other cases required plaintiffs to show only that the position was filled with a person outside the plaintiff's protected class.  *Id.*  We determined that both our prior precedent rule and an independent assessment of which standard best comported with Supreme Court precedent required only that a plaintiff show

8

that the position was filled by someone outside his protected class. *Id.* at 1193.[5]

At least at the *prima facie* case stage, a plaintiff need not show that the candidate who received the promotion was equally or less qualified than the plaintiff.

Consequently, to make out a *prima facie* case, Voudy was required to show that: (1) he was a member of a protected class; (2) he sought and was qualified for a promotion; (3) despite his qualifications he was rejected; and (4) after his rejection, his employer either continued to attempt to fill the positions or in fact filled the positions with persons outside of his protected class. *Id.* at 1186. Voudy has established each of these elements. By virtue of performing sufficiently well on the Sergeant's Exam, Voudy was eligible for promotion and therefore was at least minimally qualified for the position he sought. Voudy, who is white, was nonetheless rejected as a "sixth pick" in favor of Thomas and Cooper, who are black. Consequently, the district court erred in finding that Voudy failed to make out a *prima facie* case of discrimination.

Voudy having made a *prima facie* case, the burden then shifted to the Sheriff "to produce evidence that its action was taken for a legitimate, non-discriminatory reason." *Brooks*, 446 F.3d at 1162. "The defendant need not persuade the court that it was actually motivated by the proffered reason, but need

---

[5] We recognize that a number of our decisions continued to apply the incorrect *prima facie* case test even after *Walker*. Nonetheless, *Walker*'s thorough assessment of the appropriate standard is controlling.

only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). "However, the defendant's response must frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* (internal quotation marks omitted). "The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question." *Walker*, 158 F.3d at 1184.

Although the Sheriff's burden is "exceedingly light," *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005) (internal quotation marks omitted), we conclude that he failed to adequately articulate a legitimate, non-discriminatory reason for promoting Thomas and Cooper over Voudy. No BSO employee has identified *any* reason why Thomas and Cooper were promoted or Voudy was not promoted. Dale was unable to recall anything about why Voudy was not promoted:

> Q. Okay. . . . [C]an you state as to whether or not Deputy Cooper was more qualified for this position than Deputy Voudy?
>
> A. I don't recall the conversation on the list or—you know, I'll be honest with you, I only recognize probably a handful of names off the list. So in a side-by-side comparison, again, it's considered to be a flat list. The contract allows the Sheriff to pick basically anyone he wants. . . .
>
> Q. Well, in this particular case can you give me any parameters as to the factors indicate influencing the command staff decision that Deputy Cooper was chosen over Deputy Voudy?

10

> A.  We've had many of these conversations.  Again, the names don't mean a lot to me because I don't know many of them individually. We'll typically pick multiple sergeants in one list along with lieutenants, and then we'll have other meetings on, you know, captains and majors, so I don't recall the individual conversation as to when we were discussing Mr. Voudy or Mr. Cooper.

Dale Dep., Doc. 22-2 at 14, 19.  Nor was Colonel Alvin Pollock, another decision maker, able to identify a reason that Thomas and Cooper were promoted over Voudy:

> Q.  Okay. . . . [C]an you, sitting here today, can you give me any reason as to why Deputy Voudy was not promoted as part of the promotion selection process?
>
> A.  No, I could not, sir.

Pollock Dep., Doc. 22-3 at 17.

Instead, Dale testified to various criteria that BSO considered when determining promotions, including:  education, training, assignments and certifications, disciplinary history, ranking on the Sergeant's Exam, performance evaluations, law-enforcement experience, and attendance.  But neither Dale nor any other witness explained how these criteria were weighted or which ones were a factor in the decision to promote Thomas and Cooper over Voudy.  It appears from the record that some of the criteria militated in favor of promoting Voudy over Thomas and Cooper.  For example, Voudy ranked higher than both Thomas and Cooper on the Sergeant's Exam and Voudy had 11 more years of experience in

11

BSO's Department of Law Enforcement than Cooper. But other criteria—training, certifications, disciplinary history, and performance evaluations—appear to cut against Voudy in comparison to Thomas and/or Cooper. For other considerations that Dale identified, such as education and attendance, we simply have no evidence or insufficient evidence in the record. Without any evidence indicating how the identified criteria were weighed or considered in Voudy's case, we can do no more than speculate as to why Thomas and Cooper were promoted while Voudy was not.

It is not enough for the employer to say that general categories provide a backdrop for its decision-making process, but not tell us which categories were relied upon in this particular case. "[A]bstract terms as to what might have motivated the decision-maker" are insufficient to meet the defendant's burden of articulation. *Walker*, 158 F.3d at 1181 n.8; *see also Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1193-94 (11th Cir. 1990) (rejecting the notion that "evidence showing dissimilarities in two applicants' records" suffices to meet a defendant's burden of articulation). In the absence of any statement from the employer or its decision makers explaining the reasons for its decision, we cannot hypothesize the employer's reasons and then use that speculation to find that the employer carried

its burden of articulating a "clear and reasonably specific non-discriminatory basis for its actions." *Vessels*, 408 F.3d at 770 (internal quotation marks omitted).

Because Voudy established a *prima facie* case of discrimination and the Sheriff failed to rebut it by articulating a legitimate, non-discriminatory reason for Voudy's non-promotion, the district court erred in granting summary judgment to the Sheriff.

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment to the defendant and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**